IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CV-569-FL

| | |
|---|---|
| DAVID D. VEREEN, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| MICHAEL ASTRUE, ) | |
| Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court upon the parties' cross Motions for Judgment on the Pleadings. (DE's 32 & 36). Plaintiff has also filed a reply. (DE-38). The time for the parties to file any further responses or replies has expired. Accordingly, the matter is now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), this matter has been referred to the undersigned for the entry of a Memorandum and Recommendation. For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-32) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-36) be GRANTED, and that the final decision by Defendant be AFFIRMED.

**Statement of the Case**

Plaintiff applied for Disability Insurance Benefits ("DIB") on November 9, 2007 alleging that he became unable to work on January 13, 2005. (Tr. 11). This application was denied initially and upon reconsideration. *Id.* A hearing was held before an Administrative Law Judge

1

("ALJ"), who determined that Plaintiff was not disabled during the relevant time period in a decision dated March 3, 2010. *Id.* at 11-19. The Social Security Administration's Office of Hearings and Appeals ("Appeals Council") denied Plaintiff's request for review on October 27, 2010, rendering the ALJ's determination as Defendant's final decision. *Id.* at 1-5. Plaintiff filed the instant action on December 13, 2010. (DE-1).

**<u>Standard of Review</u>**

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...

*Id.*

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." <u>Craig</u>, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by

substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

**Analysis**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the sequential evaluation. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 13, 2005. (Tr. 13). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: 1) degenerative disc disease of the bilateral shoulders, status post surgery on the right shoulder; 2) depression; 3) hypertension; 4) patellofemoral syndrome of the right knee; and 5) osteoarthritis . *Id.* However, the ALJ determined that these impairments were not severe enough to meet or medically equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* at 14. Based on the medical record, the ALJ determined that Plaintiff had the residual functional

3

capacity ("RFC") to perform light work with certain exceptions. *Id.* at 15-17.

The ALJ then proceeded with step four of her analysis and determined that Plaintiff was not able to perform his past relevant work as a material handler. *Id.* at 18. However, based on the testimony of a vocational expert ("VE"), the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed during the relevant time period. *Id.* Accordingly, the ALJ determined that Plaintiff was not under a disability at any time through the date of her decision. *Id.* at 19. These determinations were supported by substantial evidence, a summary of which now follows.

On August 2, 2006, Plaintiff was rear-ended in his car. (Tr. 254-257). However, x-rays of Plaintiff's hip and spine revealed no explanation for Plaintiff's complaints of hip or back pain. *Id*. at 258-260. Only mild degenerative disc disease was noted at C6-C7 and C7-T1 of Plaintiff's cervical spine. *Id*. at 258. No degenerative changes were noted in Plaintiff's right hip and lumbar spine. *Id*. at 259-260. Views from September 7, 2007, were essentially the same. *Id*. at 376. Only mild disc space narrowing was noted and there was no significant osseous foraminal narrowing. *Id.* There was no evidence for acute fracture or subluxation. *Id.* Likewise, Plaintiff's hip joints were symmetric bilaterally with no evidence of degenerative change. *Id*. at 377. November 2, 2007 orthopedic views of Plaintiff's right knee were normal with no degenerative findings. *Id*. at 373, 375-76. Dr. Amy Rosenthal stated that Plaintiff's knee x-ray "looked fine, and there were no areas of concern." *Id*. at 373.

During a counseling session conducted on November 5, 2007, Plaintiff stated that "he was let go from his last job because he would have to leave the job each time his blood pressure would go up" *Id.* at 372. Plaintiff also indicated that he had limits on how much weight he could lift. *Id.*

4

Plaintiff complained of neck pain on November 26, 2007, especially when he turned to the left or looked up or down. *Id.* at 365.

On December 18, 2007 Plaintiff met with a vocational rehabilitation counselor. *Id.* at 361. No changes were reported in his depression symptoms. *Id.* He specifically stated that he felt "stuck in his depression." *Id.* However, he also noted that he "felt good after leaving the psychologist's office at last appointment with full intentions to start working towards his goals." *Id.* at 362. Plaintiff also indicated that he would rather not take antidepressant medications, but would if his doctors felt that they were necessary. *Id.* at 362. However, on January 16, 2008, Plaintiff was agreeable to trying antidepressant medication. *Id.* at 351.

W.W. Albertson, Ed.D., assessed Plaintiff's mental RFC on January 14, 2008. *Id.* at 306-323. It was determined that Plaintiff was "moderately limited" in his ability to: 1) understand and remember detailed instructions; 2) carry out detailed instructions; 3) maintain attention and concentration for extended periods; 4) complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and 5) respond appropriately to changes in the work setting. *Id.* at 306-307. In all other areas, Plaintiff was "not significantly limited." *Id.* Plaintiff was deemed capable of remembering and understanding short and simple instructions. *Id.* at 308. According to Dr. Albertson, Plaintiff could perform simple routine repetitive tasks. *Id.* Dr. Albertson opined that Plaintiff would do best in a work environment with low stress and production. *Id.* He further opined that Plaintiff's depression did not satisfy the diagnostic criteria of Listing 12.04, nor did his anxiety satisfy listing 12.06. *Id.* at 313, 315. Finally, Dr. Albertson stated that Plaintiff had: 1) mild restrictions of activities of daily living; 2) moderate difficulties in maintaining social functioning and maintaining concentration, persistence

5

or pace; and 3) no episodes of decompensation. *Id.* at 320.

Plaintiff stated on January 28, 2008 that he was "still feeling down" but overall his depression was improving. *Id* at 348. During a February 6, 2008 psychotherapy session, Plaintiff indicated that he was walking three times a week, although on some days he could not due to pain flare ups. *Id.* at 346.

Dr. Rosenthal examined Plaintiff on February 12, 2008. *Id*. at 344-345. Plaintiff complained of neck pain. *Id.* at 345. He ambulated slowly and winced leaning over. *Id.* Based on this examination, Dr. Rosenthal drafted a letter indicating that Plaintiff had been unable to work in the past due to his alleged physical and mental problems, and that these issues would likely continue to limit his ability to work. *Id.* at 381.

Plaintiff was examined by Dr. Robert S. Brice, Jr. on February 13, 2008. *Id.* at 390. During this examination, Plaintiff complained of intermittent neck pain that had been persistent over the years. *Id.* He asserted the pain was usually acute, and made it difficult for him to move without significant pain. *Id.* Furthermore, Plaintiff stated that activities of daily living were affected when he experienced acute pain. *Id.* at 391. For example, Plaintiff asserted that he had difficulty getting his clothes on. *Id.* According to Plaintiff, "[h]e has incapacitating episodes and has had 2-3 in the past 12 months where he was confined to the bed for several days." *Id.* Upon examination, Plaintiff's neck appeared stiff and he had objective evidence of painful movement. *Id.* However, the musculature of Plaintiff's back was essentially normal and Plaintiff was neurologically normal. *Id.* He also had normal strength in his extremities, intact sensation, and present reflexes. *Id.* Ultimately, Plaintiff was diagnosed with: 1) recurrent cervical neck strain with cervical neck spasm; 2) marked limitation of motion of the neck secondary to the above; and 3) radiculopathy to the left shoulder. *Id.*

6

On February 20, 2008, Plaintiff reported that he was not feeling any different mentally than his last examination. *Id*. at 341. He was strongly encouraged to increase his activity level in a carefully paced manner. *Id*. It was recommended that Plaintiff increase his medication. *Id.* Plaintiff reported on February 28, 2008, that the increase in medication helped his depressive symptoms. *Id*. at 338. Specifically, Plaintiff stated that he had been less isolative and was "beginning to find direction." *Id.*

Plaintiff was examined by Dr. Jill Lowery on March 19, 2008. *Id.* at 337. No mental status changes were noted. *Id.* Dr. Lowery indicated that it was not possible to determine whether the change in antidepressants had been effective because Plaintiff was dealing with the recent death of four friends. *Id.* However, Plaintiff did report that he was staying active and walking two to three times per week, experiencing less pain in his hip but more in his neck and shoulder. *Id.* He was also attempting to leave the house more often. *Id.* Ultimately, Dr. Lowery determined that Plaintiff "thus far has not demonstrated substantial improvements in his depressive symptoms." *Id.*

Dr. Damon Tweedy stated on March 31, 2008 that Plaintiff had experienced "modest improvements" in his psychological symptoms after five sessions with Dr. Lowery. *Id.* at 336. After those five sessions, Plaintiff also experienced early improvement when he began a medication trial, although Dr. Tweedy was unsure whether those medications were still efficacious. *Id.* It was recommended that Plaintiff receive ongoing mental health care. *Id.*

On April 21, 2008, Plaintiff indicated he had lost 12 pounds since his last visit in January due to exercising and watching his diet, although he indicated that his exercise was limited by pain. *Id.* at 333. He was described as being in "good spirits." *Id.* At this visit, Plaintiff complained of occasional headaches from his neck pain, which was relieved with BC powder, and some jaw

7

pain. *Id.* However, during his intake for this visit, Plaintiff told the nurse that his pain was a 0 on a scale of 0-10, with 0 equaling no pain. *Id.* at 332. Plaintiff was advised to see a dentist for the jaw pain and discuss changing medications with his primary physician to address his complaints of neck pain. *Id.* at 335.

Plaintiff was examined by Dr. Anthony Carraway on May 30, 2008. *Id.* at 415-419. Plaintiff reported mood symptoms, "including feelings of depression, feeling down and frustrated and feelings of irritability related to his pain symptoms." *Id.* at 415. However, Plaintiff also stated that he was able to "get along with others in the workplace setting." *Id.* Likewise, Plaintiff denied psychosis or any signs and symptoms of mania. *Id.* Physically, Plaintiff reported: 1) "continuous spine pain symptoms"; 2) decreased range of motion affecting his ability to reach; and 3) bilateral hip pain. *Id.* at 416. Ultimately, Plaintiff was diagnosed with: 1) chronic pain and associated physical limitations; and 2) mood disorder due to chronic pain with depressive symptoms. *Id.* at 417. It was determined that Plaintiff's ability to understand, retain and perform instructions was only "somewhat minimally to mildly impaired." *Id.* at 418. He was also deemed to have "somewhat moderate social and interpersonal difficulty." *Id.* Finally, it was determined that Plaintiff could handle any benefits awarded in his best interests. *Id.*

Dr. Lori Brandon Souther assessed Plaintiff's mental RFC on June 20, 2008. *Id.* at 420-433. She determined that Plaintiff's medically determinable impairments did not precisely satisfy the diagnostic criteria for Listing 12.04. *Id.* at 423. In addition, Dr. Souther determined that Plaintiff had a moderate degree of limitation with regard to: 1) activities of daily living; 2) maintaining social functioning; and 3) maintaining concentration, persistence or pace. *Id.* at 430. No episodes of decompensation were noted. *Id.* Plaintiff was deemed "moderately limited" with regard to his ability to: 1) understand and remember detailed instructions; 2) carry out

detailed instructions; 3) maintain attention and concentration for extended periods; 4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; 5) complete a normal workday and workweek; 6) interact appropriately with the general public; 7) accept instructions and respond appropriately to criticism from supervisors; 8) get along with coworkers or peers; and 9) respond appropriately to changes in the work setting. *Id.* at 434-435. In all other areas, Plaintiff was deemed "not significantly limited." *Id.* Based on these findings, Dr. Souther opined that Plaintiff could understand and remember basic two step instructions and could attend tasks for at least two hours as needed for simple tasks. *Id*. at 436. She further opined that Plaintiff would do best in settings with minimal social demands, and could respond to routine changes in the workplace within the context of a stable, low-stress work assignment. *Id*. Dr. Souther did not believe that Plaintiff's condition would preclude all work activity. *Id*.

On July 15, 2008, Dr. Stephanie Sanders assessed Plaintiff's physical RFC. *Id.* at 446-453. She determined that Plaintiff could: 1) occasionally lift and/or carry 20 pounds; 2) frequently lift and/or carry 10 pounds; 3) stand and/or walk (with normal breaks) for a total of about six hours in an eight hour workday; and 4) sit (with normal breaks) for a total of about six hours in an eight hour workday. *Id.* at 447. Dr. Sanders noted that Plaintiff was limited in his upper extremities. *Id.* In addition, she determined that Plaintiff could never climb ladders, ropes or scaffolds and could only occasionally climb ramps and stairs. *Id.* at 448. However, Plaintiff was deemed capable of frequently balancing, stooping, kneeling, crouching, and crawling. *Id.* Plaintiff's reaching was limited due to the degenerative arthritis in his shoulders. *Id.* at 449. No other manipulative, visual, or communicative limitations were noted. *Id.* at 449-450. Likewise, no environmental limitations were observed except that Plaintiff should avoid

9

concentrated exposure to hazards such as machinery and heights. *Id.* at 450.

The record also includes evidence of Plaintiff's participation in a Cognitive Behavioral Pain Management group between August and October of 2008, which focused on pacing, relaxation exercises, goal setting, and monitoring thought patterns. *Id.* at 454-465, 526. On multiple occasions, Plaintiff demonstrated no indicators of acute pain. *Id.* at 456, 460, 526. Plaintiff stated that he received great benefit from this group on October 20, 2008. *Id.* at 454, 465.

A February 10, 2009 radiology report indicated that there had been little significant change to Plaintiff's right shoulder since the prior July 18, 2006 examination. *Id.* at 478, 529. The glenohumeral articulation was still normal, there was no abnormal calcification and no evidence of impingement. *Id.* at 478, 529. An April 14, 2009 radiology report reflected normal lumbar spine radiographs with normal alignment, no spondylolisthesis or spondylosis, well-maintained vertebral body and disc interspace heights, and no fractures or osseous lesions. *Id.* at Tr. 528. Radiographs of Plaintiff's left hip were also normal. *Id.* at 527.

Physical therapy treatment notes signed on June 3, 2009 indicated that Plaintiff's shoulder was "feeling better." *Id.* at 535. Plaintiff was examined on June 8, 2009. *Id.* at 531-532. He complained of "deep aching pain" in his shoulder. *Id.* at 531. A review of x-rays revealed "little significant interval change in the radiographic appearance of the right shoulder." *Id.* at 531.

An MRI performed on Plaintiff's right shoulder on July 7, 2009, revealed a rotator cuff tear and intra-articular biceps tendinopathy. *Id.* at 576, 608-09. The next step would be shoulder arthroscopy, which was scheduled for November. *Id.* at 576. At his August 7, 2009 physical therapy session, Plaintiff indicated that he wanted to focus solely on his left groin/hip pain, no longer treating his right shoulder except to address pain management issues. *Id.* at 575. At the appointment, Plaintiff indicated that his right shoulder was painful, but his left groin pain was not

10

"too bad." *Id.* at 575.

Dr. Rosenthal completed a medical source statement on October 15, 2009. *Id.* at 610-613. She stated that she had been treating Plaintiff since July, 2003, and that Plaintiff had been diagnosed with: 1) cervical degenerative disc disease; 2) hypertension, 3) depression; 4) shoulder pain/rotator cuff tear; and 5) knee pain. *Id.* at 610. In addition, Dr. Rosenthal indicated that these medical problems were likely to cause pain and that Plaintiff was not a malingerer. *Id.* Likewise, Dr. Rosenthal stated that Plaintiff's pain was severe enough to frequently interfere with his attention and concentration, and that Plaintiff's depression contributed to his functional limitations. *Id.* at 611. Based on these findings, Dr. Rosenthal opined that Plaintiff was incapable of even low stress jobs. *Id.* at 611. Specifically, Dr. Rosenthal determined that Plaintiff could: 1) sit for 30 minutes at one time and for a total of two hours in an eight hour day; 2) stand for 15 minutes at one time and for a total of two hours in an eight hour day; 3) walk for 15 minutes at one time and for a total of two hours in an eight hour day; 4) work for a total of two hours in an eight hour day; and 5) occasionally lift and carry less than 10 lbs, and never carry any greater weight.

The ALJ made the following specific findings with regard to Dr. Rosenthal's October 15, 2009 findings:

> Little weight is also given to Dr. Rosenthal's October 15, 2009 opinion that the claimant can lift less than 10 pounds, sit, stand, and/or walk 2 hours in an eight-hour workday, exhibits significant limitations in repetitive reaching, handling, and fingering, would miss three days of work a month, and is incapable of low stress jobs (Exhibit 24F). The undersigned notes that the extreme limitations noted by Dr. Rosenthal . . . regarding the claimant's ability to lift and carry, as well as sit, stand, walk, handle, and finger, have no support from the objective medical record, as none of the VA notes mention the above limitations and the VA has only granted the claimant 20% total disability. However, the limitations noted in repetitive reaching do find support and have been accommodated for by . . . limiting

11

the claimant to no more than occasional overhead reaching with the right
upper extremity.

*Id.* at 16-17.

The VE was asked to consider an individual with Plaintiff's mental and physical RFC. *Id.* at 47-48. He testified that such an individual could not perform any of Plaintiff's past work, but that he could perform several other jobs which exist in significant numbers in the national economy. *Id.* at 48.

On March 23, 2010, Plaintiff underwent a right rotator cuff repair with a biceps tenotomy. *Id.* at 632-40. Records indicate that Plaintiff was experiencing pain but doing as expected 10 days post surgery. *Id.* at 641. He also participated in a six session therapy group called "Stress Management and Beyond" in February and March of 2010. *Id.* at 662-66.

Plaintiff testified during the hearing in this matter. *Id.* at 29-46. He stated that he underwent right shoulder surgery and still had "a lot" of pain in his right shoulder. *Id.* at 34 According to Plaintiff, he is never without pain in his right shoulder. *Id.* He stated that raising his arm aggravates his shoulder pain. *Id.* at 35. Plaintiff also reported neck and back pain. *Id.* This shoulder, neck and back pain was alleviated somewhat with pain medication. *Id.* at 36. In addition, Plaintiff testified that he suffered from knee and hip pain. *Id.* at 37-38. Furthermore, Plaintiff alleged that he experienced high blood pressure that was not adequately controlled by medication. *Id.* at 38-39. Plaintiff testified that his depression had not improved. *Id.* at 39. However, he also stated that he did not see the need to be treated by a psychologist. *Id.* at 40. Because of these symptoms, Plaintiff indicated that he could only: 1) sit for 20 minutes before needing to stand; and 2) stand for 30 minutes before needing to change position. *Id.* at 41. Likewise, Plaintiff asserted he could lift no more than 20 pounds. *Id.*

12

Based on this record, the ALJ made the following specific findings:

> Despite his combined impairments, the medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination. Specifically, the record does not show that the claimant has major dysfunction of any joint, or signs of inflammation or deformity in two or more joints, resulting in an inability to ambulate effectively or an inability to perform fine and gross movements effectively, as required by Medical Listings 1.02 and 14.09 any . . . time before the date last insured. The claimant's neck and back pain also does not manifest itself in any problems ambulating effectively and is not caused by any nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis as required by Medical Listings 1.02 and 1.04.
>
> The claimant's mental impairment also did not meet or medically equal the criteria of listing 12.04 . . .
>
> The undersigned agrees with the DDS assessment at Exhibit 16F and finds that the claimant suffers from a moderate restriction in activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence, or pace, and no episodes of decompensation, which have been of extended duration . . .
>
> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he could only occasionally perform overhead reaching with the right upper extremity, occasionally climb ramps and stairs, and never climb ladders, ropes, or scaffolds. The claimant must also avoid concentrated exposure to hazards. Mentally, the claimant is capable of simple, repetitive, routine tasks with occasional interaction with the public and only routine changes in the work environment . . .
>
> The above physical and mental findings are consistent with the findings on the DDS Physical Residual Functional Capacity Assessment at Exhibit 19F and the findings on the DDS Mental Residual Functional Capacity Assessment at Exhibit 17F, which are given weight due to consistency with the objective medical record . . .
>
> The claimant testified that he suffers from shoulder pain, which is worse in the right shoulder where he underwent surgery. The claimant added that his shoulder pain is constant in the right shoulder and results in problems raising his right arm. Frequent pain in the left shoulder, neck and back pain, knee pain, and high blood pressure readings despite medications were also

13

all noted. While the claimant testified his neck and back pain began while he was in the service in 1973, the claimant added that his back pain increased after a motor vehicle accident in 2006 and affects his ability to sit for long periods due to pain and spasms. However, the claimant admitted that there has been no discussion of the need for surgery. Physically, the claimant felt he could only sit for 2 minutes before experiencing pain in the hips and knees, stand for 30 minutes, and lift no more than 20 pounds. The claimant added that he was unsuccessful with his last 3 jobs due to the required bending and stooping which hurt his back. Regarding depression, the claimant testified that he feels sad and worthless, experiences problems with his memory, does not feel comfortable around people, and would rather be at home . . .

Extensive medical records from the Durham Veteran's Administration Clinic (VA) confirm treatment for shoulder pain with a history of shoulder surgery in 2001, well before the claimant's alleged onset date on January 13, 2005. X-rays in July of 2006 revealed joint narrowing and osteoarthritis changes. The records also confirm that the claimant was involved in a motor vehicle accident on August 2, 2006 and suffered a cervical/lumbar strain and right hip contusion. X-rays also revealed mild degenerative disc disease of the cervical spine. Follow-up notes on April 26, 2007 continued to document shoulder pain but the claimant admitted that he was not doing the recommended shoulder exercises. Neck pain was described as better but as still "locking up" on the claimant. Exam revealed limited flexion of the neck to 45 degrees and a limited range of motion to 120 degrees of the right upper extremity. However, range of motion was normal in the left upper extremity and motor strength was 5/5 throughout. The claimant was also able to heel and toe walk. On October 5, 2007, exam demonstrated a full range of motion in the extremities, normal ambulation, 5/5 motor strength throughout, unremarkable x-rays of the hips and lumbar spine, and no muscle spasms. In November and December of 2007, ambulation was again normal but the claimant's neck and right shoulder continued to demonstrate limitation. In 2008 and 2009, neck stiffness, very little spontaneous movement in the neck, and some disc disease which accounted for some of the radiculopathy into the claimant's left shoulder was noted. Decreased motion in the right shoulder and pain which had not responded to therapy or injections was also noted, and the claimant underwent a right rotator cuff repair on November 24, 2009. However, exams continue to assess the claimant with only 20% disability which is not considered disabling under VA standards (Exhibits 10F, 11F, 18F, 20F, 21F, 22F, 23F, and 25F).

Regarding blood pressure, readings at the VA are sometimes high. However, there is no evidence of any complications such as kidney or heart problems (Exhibits 10F, 11F, 18F, 20F, 21F, 22F, 23F, and 25F). Regarding knee pain, x-rays of the right knee show good preservation of the joint

14

> spaces. The claimant's right knee pain is also described as mild and "not resulting in significant disability". Finally, exams reveal no muscle atrophy or muscle weakness (Exhibit 13F and 15F) . . .
>
> Mentally, the VA diagnosed the claimant with depression which is treated with medication and therapy. However, exams reveal only a depressed mood and a frustrated affect due to the claimant's financial situation which requires him to live with his estranged wife. Exams reveal no other significant mental concerns . . .
>
> The undersigned notes that the above limitations noted by Dr. Carraway have been accommodated for by limiting the claimant to simple, repetitive, routine tasks with occasional interaction with the public and only routine changes in the work environment. The undersigned further notes that there is no evidence in the VA records to support any opinion by Dr. Rosenthal that the claimant cannot work due to depression . . .
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible and would not preclude light work as described above. In sum, the claimant's documented shoulder limitations are accommodated for by limiting the claimant's overhead reaching and the pain and his limited range of motion in the cervical spine is accommodated for by limiting lifting and carrying to 20 pounds occasionally and 10 pounds frequently. Mentally, great weight is given to the mental limitations noted by Dr. Carraway. However, the undersigned notes that accepting those limitations does not preclude all work. The undersigned is in no way implying that the claimant does not experience some limitations due to his impairments. However, the limitations alleged by the claimant that find support within the objective medical record have been accommodated for by the above residual functional capacity.
>
> (Tr. 14-17).

The Court hereby finds that there was substantial evidence to support each of the ALJ's conclusions. Moreover, the ALJ properly considered all relevant evidence, including the evidence favorable to Plaintiff, weighed conflicting evidence, and fully explained the factual basis for his resolutions of conflicts in the evidence. Plaintiff's argument relies primarily on the

15

contention that the ALJ improperly weighed the evidence. However, this Court must uphold Defendant's final decision if it is supported by substantial evidence. Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. Craig, 76 F.3d at 589. Because that is what Plaintiff requests this Court do, his claims are without merit.

The undersigned will nonetheless briefly address portions of Plaintiff's specific assignments of error.

**The ALJ properly weighed the medical evidence**

Plaintiff asserts that the ALJ erred in the weight he assigned Dr. Rosenthal's medical opinions. It is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. Wireman v. Barnhart, 2006 WL 2565245 (Slip Op. at 8)(W.D.Va. 2006)(internal citations omitted). Furthermore, "while an ALJ may not reject medical evidence for no reason or the wrong reason . . .an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings." Id. (internal citations omitted).

While "the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). Rather, "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro, 270 F.3d at 178. Thus,

"[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. In sum, "an ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion." Koonce v. Apfel, 166 F.3d 1209 (4th Cir. 1999) (unpublished opinion)(internal citations omitted).

In her decision, the ALJ fully explained her reasoning in weighing the medical evidence. These reasons were supported by substantial evidence and, therefore, this assignment of error is without merit.

**The ALJ properly assessed Plaintiff's credibility**

Plaintiff also contends that the ALJ incorrectly assessed Plaintiff's credibility. The ALJ's findings with regard to Plaintiff's subjective complaints have already been summarized. "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

Furthermore, the regulations provide a two-step process for evaluating a claimant's subjective complaints of pain or other symptoms. 20 C.F.R. § 404.1529; Craig, 76 F.3d at 593-96. First, the ALJ must determine whether there is objective medical evidence showing the existence of a medical impairment that could be reasonably expected to produce the pain or alleged symptoms. 20 C.F.R. § 404.1529(b); Craig, 76 F.3d at 594. Second, the ALJ evaluates the intensity and persistence of the symptoms to determine how they limit the capacity for work. 20 C.F.R. 404.1529(c); Craig, 76 F.3d at 595. The ALJ evaluates the intensity and persistence of the

17

symptoms and the extent to which they limit a claimant's capacity for work in light of all the available evidence, including the objective medical evidence. 20 C.F.R. 404.1529(c). At the second step, however, claims of disabling symptoms may not be rejected solely because the available objective evidence does not substantiate the claimant's statements as to the severity and persistence of the symptoms. *See* Craig, 76 F.3d at 595. Since symptoms can sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, all other information about symptoms, including statements of the claimant, must be carefully considered in the second part of the evaluation. 20 C.F.R. 404.1529(c)(2). The extent to which a claimant's statements about symptoms can be relied upon as probative evidence in determining whether the claimant is disabled depends on the credibility of the statements. SSR 96-7p, 1996 WL 374186, *4.

Here, the ALJ followed these standards in assessing Plaintiff's credibility. The ALJ's findings of fact demonstrate that the ALJ gave proper weight to all of Plaintiff's limitations and impairments in assessing Plaintiff's credibility. Likewise, the ALJ's citations to Plaintiff's medical records constitute substantial evidence which support her assessment. Accordingly, this assignments of error is without merit.

18

**Conclusion**

For the aforementioned reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-32) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-36) be GRANTED, and that the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Tuesday, August 30, 2011.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE